IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| CIRO CID ADAMES, #424362 | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-04-47 |
| | § | |
| TERRI FOSTER, ET AL.[1] | § | |

### REPORT AND RECOMMENDATION

Plaintiff Ciro Cid Adames, proceeding *pro se,* brings this complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants Warden Terry Foster and Tammy Jackson were deliberately indifferent to his serious medical needs when they failed to properly provide for his special needs after retinal surgery. Currently pending before the Court is Defendants' Motion for Summary Judgment, to which Plaintiff has filed no response. Having considered all relevant pleadings and summary judgment evidence, the Court now submits this Report and Recommendation to the District Court.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party in a summary judgment action "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the pleadings, interrogatories, and admissions on file, together with the affidavit(s), if any, which are believed to demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Id*. at 325. This burden is not satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v.*

---

[1] Dr. Qui Huynh was dismissed from this cause by Order of the District Court, on May 24, 2005. The style has been changed to accurately reflect remaining Defendants in this cause.

1

*Liquid Air Corp*. 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, the non-moving party must come forward with competent summary judgment evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Summary judgment may not be awarded by default, however, merely because the moving party has failed to respond. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the Court may not grant the motion, regardless of whether any response was filed." *Hetel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995)(citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). Nonetheless, the District Court may accept as undisputed the facts set forth in support of the unopposed motion for summary judgment. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

Plaintiff underwent surgery to reattach his retina on January 7, 2002 and January 9, 2002. On January 10, 2002, he was discharged from the hospital and returned to the Ramsey I unit. He alleges that Defendants Foster and Jackson[2] were deliberately indifferent to his serious medical needs by failing to transfer him to an infirmary unit where, he opines, he would not have had to walk to and from the shower, dining room and medical department, as he had to do at the Ramsey I unit. Plaintiff asserts the performance of these daily, necessary activities prevented him from lying in a face-down position in bed and caused his retina to detach, necessitating further, painful surgery.

In their Motion for Summary Judgment, Defendants provide a detailed account of Plaintiff's medical history relevant to his claims. The medical evidence does not support Plaintiff's allegations.

---

[2] Tammy Jackson was chief of classification of inmates at the Ramsey I unit during the time period made the basis of this suit.

2

In her discharge statement[3], Dr. Li, Plaintiff's ophthalmologist at UTMB, notes that due to the type of retinal damage Plaintiff had, it was unsure if the surgery was sufficient to close the breaks in his retina, but it was "deemed to be in good condition and improved condition after the initial presentation." The statement further notes that Plaintiff was to be transferred back to his unit, maintain as much bed rest as possible in a face-down position, be medically unassigned and have a keep-on-person pass for his eye drops. On January 18, 2002, Plaintiff was re-examined and it was noted that his retina had re-detached

In his sworn affidavit, Dr. Bruce Smith states the following:[4]

1.   Plaintiff was returned to Ramsey I at the request of his ophthalmologist, who did not request an infirmary placement;

2.   the physician ordered bed rest in a face-down position as much as possible;

3.   Plaintiff was to be medically unassigned and would only need to be mobile to go to chow and to shower;

4.   Plaintiff's limited activity would allow him at least twenty-three hours of bed rest in a face-down position;

5.   Plaintiff signed a consent form which clearly stated that the possible risks of surgery included "need of other procedure/surgery" and "recurrence of disease."

In Dr. Smith's opinion, Defendants were not deliberately indifferent to Plaintiff's serious medical needs; in fact, all instructions were followed. Additionally, Plaintiff was housed on the first row of the prison and assigned a bottom bunk. According to Dr. Smith, the re-detachment was not related to the medical care that he received at the Ramsey I unit, but to the severity of his initial

---

[3] Defendants' Motion for Summary Judgment, Exhibit B.

[4] Defendants' Motion for Summary Judgment, Exhibit C.

detachment. Nor was his need for further surgery due to his walking to and from the dining room, showers and infirmary. Dr. Smith asserts that Plaintiff would have needed further intervention even if he had been confined to an infirmary bed, due to the severity of the initial retinal detachment.

In order to prevail on a claim of inadequate medical care under the Eighth Amendment and 42 U.S.C. § 1983, a Plaintiff must establish deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-107 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle,* 429 U.S. at 105-06. The appropriate test for deliberate indifference is subjective recklessness used in the criminal law; *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994); thus, a prison official is not liable unless he "knows of and disregards an excessive risk to inmate health or safety". *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)(citing *Estelle*, 429 U.S. at 104). In order to establish that this right has been violated, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Farmer,* 511 U.S. at 834 (*quoting Wilson,* 501 U.S. at 298). In other words, the prisoner must show that the risk of which he complains is one in which today's society would not tolerate. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Secondly, he must show that prison officials "knew of and disregarded an excessive risk to inmate health or safety"; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer,* 511 U.S. at 834.

As correctly noted by Defendants, Plaintiff claims that he *should have been* transferred to a special infirmary unit, but medical records clearly evidence that this is his opinion, only. No mention is made in the records by a physician or health care provider that he should be transferred to an infirmary unit. Rather, summary judgment shows that Plaintiff's housing and work restrictions

4

and medical care were in strict compliance with the directives of Plaintiff's physicians at UTMB. Defendants Foster and Jackson, as administrative, non-medical personnel, had no authority to make or change a physician's orders simply because Plaintiff wanted them to. Records also show that Plaintiff never submitted a request to the medical department that he be transferred, nor did he file a grievance seeking a transfer. There are simply no facts to suggest that either Defendant was deliberately indifferent to Plaintiff's serious medical needs.

For the aforementioned reasons, this Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (Instrument no. 23) be **GRANTED** and the instant cause be **DISMISSED with prejudice as frivolous.**

The Clerk shall send a copy of this Report and Recommendation to the Plaintiff, who shall have until **August 16, 2006,** in which to have written objections physically on file in the Office of the Clerk. The objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300. Failure to file written objections within the prescribed time shall bar an aggrieved party from attacking on appeal the proposed factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this the ___27th___ day of July, 2006.

John R. Froeschner
United States Magistrate Judge